Mr. Ward, I see that you reserved three minutes of your time for rebuttal, correct? That's correct, Your Honor. Okay. We're ready when you are. Thank you, Your Honor. May it please the Court, the District Court erred in finding that Exela infringed the 218 claims under the Doctrine of Equivalence for two reasons. First, the District Court failed to apply the Vitiation Doctrine and find no equivalence as a matter of law. And second, the District Court clearly erred in finding that Cadence's evidence showed an equivalence. I'd like to talk about Vitiation first. Now, the District Court construed Claim 1 to require that the acetaminophen be in solution before the dissolved oxygen content is reduced below 2 ppm. On the other hand, it's undisputed that Exela adds its acetaminophen to water only after the oxygen content is below 2. District Court rightly found no literal infringement, but wrongly found infringement under the Doctrine of Equivalence using a fact-based, insubstantial differences test. This was error that the Court should have applied the Vitiation or All Limitations Doctrine. Specifically... What difference does it make when the acetaminophen is added with purposes for the Doctrine of Equivalence, whether it's before the deoxygenation, or before the deoxygenation, during the entire process, or at a certain point in time in the process, as long as it's in there? Don't you have substantially the same result? The issue here, Your Honor, no, that's not correct. That's the fact-based inquiry that the District Court made that it should never have gotten to, because what the Court should have done is looked at this and said that the claim requires the acetaminophen to be in before. Exela puts it in after. That falls strictly within and straightly in the rationale of the Planet Bingo case. And in Planet Bingo, what happened there was the claim required a winning combination to be chosen before the first ball was picked. The accused infringer, their winning combination was not chosen until after that first ball was picked. The District Court level, the patentee argued there's no real difference between before and after. If you do it, it's basically the same thing. The Court ignored that evidence and said, no, we have a situation here where we have a polar opposite or an antithesis. And so we're not going to look at that factual evidence. We're not going to look at that determination. And it made a summary judgment ruling of no infringement. Mr. Ward, it seems to me your assessment of this vitiation doctrine is not correct, because you seem to be saying that, well, the Court should first look to see if the claim reads directly on the accused. And if not, then the question is, well, is there vitiation? And if there's vitiation, then you don't look to see whether there's substantially the same function way result. But that's not really what our law says, that you look first to see whether there could be an equivalence, whether there could be some evidence to show that it's substantially the same function way result or an insubstantial difference. If there is no way a reasonable juror could reach that conclusion, or if there's no proper legal basis for the equivalence determination, only then would you conclude that there's vitiation. That's squarely what we said in the Dupuis-Fine case. Your Honor, if you look at the Planet Bingo case and the Moore case, and you go back to the Hilton Davis case, the Court talks about there's certain instances where you have certain differences that are such on their case that no reasonable fact finder could find equivalence. For example, in the Moore case, it was a majority versus a minority. And the facts there were, one, the patentee required that a strip go the majority of a sheet. The accused infringer's strip went 47.8%. Both at the trial court and at the appellate level, the argument was we should have been able to say that 47.8 is insubstantially different from 50.01. And in both cases, in the appellate court here, the Federal Circuit said, you're not allowed to do that here because these words, majority and minority, are such that no reasonable fact finder could say that they're equivalent. And that's what we have here. That's the same in Planet Bingo. Planet Bingo said these words, before and after, when this ball is chosen, are such that no reasonable fact finder could say equivalence is present. And so they didn't get to that second step. But you can't read those cases to stand for some rigid black and white doctrine that would obviate the reliance on the doctrine of equivalence every time there's a difference between the claim and the accused structure. Because otherwise, you just simply read out the doctrine of equivalence. And that's not right. No, I agree with that, Your Honor. I mean, what you said a moment ago at the beginning of your comment was that in those cases, the Planet Bingo case and the Moore case, that no reasonable juror could conclude that there was an equivalence. And that would call into play the so-called vitiation conclusion. In effect, vitiation is simply a legal conclusion reached when there is no proper basis to conclude that something's equivalent. It's not the other way around. But, Your Honor, in some of these cases, what I'm saying here in Planet Bingo and Moore, for example, the vitiation conclusion was reached without a consideration of the evidence because these were summary judgment decisions. Mr. Ward, let me take you somewhere a little different. In your opening break, you rely on examples from the 222 to argue it should be invalidated as obvious. Yes. Where in the record is your expert testimony regarding that issue? Our expert testified regarding the 222. I will give you the site, Your Honor. Fine. Thank you. Our expert, Dr. Palmieri, went to cited example 2.2 at A20934-35. And what he said was... Say it again. I'm sorry. A20934-35. And there, Dr. Palmieri was talking about example 2.2 of the 222 patent. And what he said was, and what the example says, is that it discloses that based on work that they did, that the acetaminophen, contrary to what the previous conventional wisdom was, may actually react first with the oxygen in the solution. And that's the testimony he made. And he said one seeing that would then know that you'd like to remove as much of the oxygen from the system as possible. There's other evidence in the 222 patent as well, Your Honor. There's evidence that the patent itself says stability depends on removal of oxygen from the carrier.  where the aqueous medium is deoxygenated. And so it recognizes deoxygenation is important. And Dr. Schoonen, Cadence's expert, defined deoxygenation as meaning removing as much oxygen as possible from a system. So there's definitely motivation in the 222 patent to remove as much oxygen as possible. And the way that you do that was known. It was known from the papers of Dr. Palmieri and Dr. Schoonen that were preceding the 218 patent by many, many years. And there was also an admission in the 218 patent that it was easy to remove oxygen or deoxygenate bulk solutions in airtight tanks. And so one reading the 222 would understand they should remove as much oxygen as possible. It's just common sense. If oxygen damages the system, causes degradation, get rid of it. And you know how to do it. And you have a reasonable expectation of success because the techniques to do so have been around for a long time and the patent says they're easy to do. And then when you get to the secondary considerations, if you agree with us on that there's no infringement either with respect to the vitiation doctrine because there was no evidence, then there's no nexus between the commercial product and many of the secondary considerations. So they're out. But even if you don't agree with that, the problem that we had here was that the district court said that the 222 patent, that these commercial products were also embodiments of the 222 patent and embodiments of the 218 patent. And it never made any analysis of what the 218 patent added to the commercial product that was not present from the 222. And under the Ohio Willowood case, that's not sufficient to show these secondary considerations such as commercial success, long felt need, licensing and praise because there's no separation between that that was due to the 222 patent versus that which was due to the 218 patent. Now Judge Lynn, I would like to come back briefly to one remark you made. We're not advocating for the abolition of the doctrine of equivalence. What we're saying is that in certain instances such as the one we have here, no fact finding is necessary. And I realize in Brilliant Instruments and some other cases there's been pushback from the court saying it's not a situation. We're not just talking about binary choices. We're not talking about a situation. Well, we don't have the literal thing so it's not present. That's vitiation. That's not what we're talking about. We're talking about a situation where you use these types of words before and after. That's one that was chosen in Plano Bingo where somebody looks at this and they know without engaging in the fact finding. But you said in Plano Bingo it didn't make sense to change the order of the steps and the things. And here it does make sense. They never got into the issue of whether it made any sense to change the order. That was the argument that the patentee made. It made no difference whatsoever whether that winning combination was chosen right before the first ball or right after the first ball. And the court said we're not going to delve into that. And that's what we're saying here. You don't get to that point because these words before and after and the way this claim was drafted, no reasonable fact finder could find infringement under the Doctrine of Equivalence. I'd like to briefly just get to one other infringement issue on the 218 patent. And that is the issue of the pressure step. The pressure step was found to be optional. What's there is reducing the pressure to below 65,000 pascals. Shown to be optional. The district court found it to be optional. We believe, and we believe the evidence clearly shows based on the file history that that is a requirement. And it's a requirement because the examiner said it was a requirement. And then the patentee distinguished his invention from the prior R-222 patent based on the pressure step. You're talking about the vacuum package step. Isn't that an option? It's optional, isn't it? No, it's not, Your Honor. At the very least, it's not optional based on the prosecution history. Does it optionally modify that step? The word optionally in the claim? Optionally in the claim appears one phrase before it. So there is an argument that it does modify it. There's an argument that it doesn't. Our point is... What does optionally do? Our argument is even if the claim said it's optional, it is no longer optional because of what happened in the file history. That's our argument. And we say despite what it says in the claim, if you read the claim, it's saying it's optional. The file history clearly shows that it's not because the inventors relied on it to distinguish it over the 222 patent and called it the pressure requirement. I see I'm in my rebuttal, sir. So I'll stop for now. Thank you very much. Thank you. Mr. Shuler. Good morning. May it please the Court. I'm Ken Shuler and I'm arguing today on behalf of both Cadence and PharmaTop. At the outset, unless the Court would like me to address a different subject, I will start with equivalence. You know, Excella's effort to cast this as a before versus after, per se, formulaic rule, you know, is squarely foreclosed, we think, by the Supreme Court's decision in Graber Tank, which emphasizes that equivalence is not the prisoner of formula. It can't be considered in a vacuum. In fact, things that for some purposes may be different, other instances might be equivalent. Ambition is not some sort of exception to, as the Court noted, it is simply the outcome of the insubstantial differences test. What do you say to your opponent's argument as to the application of a plan of bingo to this case? I would say three things. First, that you can't formulaically, you know, do a per se before. It could never be the same as after. But more fundamentally, they're factually wrong. This isn't a situation of before versus after. The District Court found, and the evidence showed, that Excella bubbles both before and after they add the acetaminophen. And the District Court found that that was insubstantially different than bubbling before. The second point I would make is that this is a method step. And the activity that's specified is deoxygenation of the solution by bubbling with at least one inert gas until the oxygen content is below two parts per million. Now, the opposite of deoxygenation would be oxygenation. The opposite of an inert gas would be a non-inert gas like oxygen. The opposite of until below two parts per million would be until above. So the antithesis of this particular method step would be oxygenation of a solution by saturating it with a non-inert gas to achieve a higher oxygen content than what is specified. And so that's the second point we would make. The District Court's findings, by the way, were very specific. The District Court found that Excella's argon blanketing is bubbling. That's at A39. It also found that the argon bubbling deoxygenates the solution. That's at A17. It also found that Excella employs argon bubbling after it adds the acetaminophen. That's at A17 and obtains a final dissolved oxygen content of below 0.5 parts per million. Now in the context of this claim, the method step at issue, given that Excella has challenged none of those predicate findings, that's clearly erroneous, the District Court plainly did not vitiate this claim step at issue. The other point we would make is that this Court has held that the vitiation effectively, excuse me, requires the finding that no reasonable fact finder could find equivalence. And here we had a fact finder that found equivalence. So Excella has to identify something that the District Court did that was so unreasonable that, in other words, a fact finder was so unreasonable that no reasonable fact finder could have found equivalence. And yet when this Court asked this morning, Excella still can't identify what's the substantial difference? What difference does it make? And the District Court plausibly found here that the two processes are essentially interchangeable. That's A45. That the result is the same regardless of the timing of the addition of the acetaminophen. That's at A46. And that adding acetaminophen before or after the deoxygenation step would have no impact on the stability of the final product. That's at A45. Go ahead. Would you address the construction by the Court of Equity solution? Yes. Our argument is obviously that the Court can affirm based on equivalence. But we also believe that the District Court erred in several fundamental ways with regard to aqueous solution. The first error is that the District Court departed from the ordinary meeting without any adequate basis. The undisputed information in the record, which is Dr. Byrne's declaration, was that the ordinary meeting of aqueous solution to those scientists in the field is simply, does not require the addition of the acetaminophen. The only thing that Excella offers on appeal to defend the District Court's claim construction is the notion that it's an antecedent and an antecedent has to have the same meaning throughout the claim. But this Court held in microprocessor that that's not the case. That the patentee's use of a term with an antecedent does not require that both terms have the same meaning. Now, the third problem is that the District Court read out a preferred embodiment. Example A to the specification indicates that the solution was formed with continuous bubbling. The only testimony on that was, again, from Dr. Byrne who said people of ordinary skill in the art would understand that means bubbling the water and then continuing to bubble as you add the other ingredients. That embodiment is read out by the District Court's construction, which is rarely, if ever, the correct result. If we were to adopt your claim construction wouldn't we be reading out or making the entire claim nonsensical because we'd be talking about a different active principle? We don't believe so, Your Honor. We believe that, in fact, the next point I was going to make is that the patentees were very clear that certain times during the method step you do have to have the active principle. They distinguish that from their use of the bare term aqueous solution. So those two terms the Court's jurisprudence indicates are presumed to have different meanings. And it makes sense. The point where they specified you have to have the active principle is when you put it in the vial and top it. You can't put the acetaminophen in after it's been topped. They also said at the end of the claim method, which is the preamble, obviously if you follow the steps you will come up with an aqueous solution of acetaminophen that contains the acetaminophen and has the prolonged stability. But in other instances they said you just simply have to have an aqueous solution. And that makes sense because they were giving those two terms to the District Court. In fact, the District Court admitted in its claim construction order that the construction that it adopted renders the claim redundant. And that's problematic particularly where the redundancy departs from the ordinary meaning of the term aqueous solution. Unless there's any further questions on that, I'm happy to address any other issues or I'm happy to address other briefs. Thank you. Thank you. I'd like to go back to the vitiation very quickly. We're saying it's a narrow doctrine. We're not trying to overtake the doctrine of equivalence. It's narrow, but it does apply here based on Planet Bingo. You restated the vitiation doctrine. I mean, you've reordered it. You want us to find vitiation before we even find equivalence. No, what I'm saying is that there are certain situations where you don't need to engage in fact-finding. And that's what happened in both the Moore case and the Planet Bingo case. And what the District Court judge here did is he engaged in fact-finding and says, well, because I find these differences to be insubstantial, there can be no vitiation. And I think that's doing it a little bit backwards. But in Planet Bingo, there was a determination that there could be no equivalent. There was a determination. It was all about whether the winning combination, predetermined combination, whether that language in the claim, predetermined combination, could be determined before the game starts or after the game begins. And the conclusion the court raised was that the winning combination cannot be predetermined. Under these circumstances, unless it's determined before the game begins. So there was no possibility. No reasonable juror could find otherwise. Well, what they said was that... Entirely consistent with all of the other cases where we've, in effect, used the word vitiation simply as a conclusion to reflect the fact that no reasonable juror could find equivalence. To try to make that into a doctrine in and of itself that supersedes or overshadows the determination of equivalence is simply not supported. I'm not trying to say that it is. What I'm trying to say is there are certain circumstances. And in that case, they found predetermined meant before. And so they looked at before and after and they said before and after no reasonable juror could find equivalence game over. All you have to do is read the claim. The claim has a preamble that says the solution contains acetaminophen. And then it talks about the solution, the antecedent basis. It's black letter law. It's very clear what this claim is about. And I see I'm out of time. And so I thank you very much. Thank you very much. My felicitations for ending a discussion of Planet Bingo with game over.